UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RAYMOND P. COPE,   Case No. 1:15-cv-280

        Plaintiff,   Beckwith, J.
                                                                                                    Bowman, M.J.
   v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Raymond P. Cope filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED AND REMANDED, because it not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On April 26, 2011, Plaintiff filed an application for Supplemental Security Income ("SSI"). Plaintiff alleges a disability onset date of May 21, 2002 primarily based upon chronic and severe low back pain attributed to a work-related accident sustained when

1

he was 23 years of age.[1] Plaintiff also alleges a mental impairment due to depression and panic attacks.

Plaintiff filed at least one prior application for disability insurance benefits ("DIB"), which was denied in May 2006, and not appealed. (Tr. 34, 35, 72). However, the ALJ made no mention of the earlier application in her opinion, presumably because the instant application was for SSI and not DIB. Unlike DIB, which may be awarded retroactively, under 20 C.F.R. § 404.621(a), SSI benefits may not be awarded prior to the date an application is filed – in this case, April 26, 2011.

Plaintiff has prior relevant work as a kitchen manager and cook, but has not engaged in any substantial gainful activity since his disability onset date. Following his accident, Plaintiff underwent four surgical procedures, including a right lumbar laminectomy, medial facetectomy, foraminotomy, and microdiscectomy of L3-4 and L4-5 in May 2003 (Tr. 483-484), a right L5-S1 laminotomy, discectomy, and nerve root decompression in November 2004 (Tr. 496-493), a neurolysis with decompression of right L4 and L5 nerve roots in September 2005 (Tr. 489-493); and implantation of a spinal cord stimulator in September 2006 (Tr. 489-493).

After Plaintiff's SSI application was denied initially and upon reconsideration, he requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). On January 16, 2013, a hearing was held before ALJ Kristin King in Cincinnati, Ohio. (Tr. 29-57). Plaintiff appeared with counsel, and provided testimony, as did a vocational expert ("VE"). On August 7, 2013, ALJ King issued a decision, concluding that Plaintiff

---

[1] Plaintiff received worker's compensation for a temporary total disability claim until he reached maximum medical improvement. At the time of the hearing before the ALJ, he was awaiting a determination of permanent total disability under the state worker's compensation system. (Tr. 35).

2

was not disabled. (Tr. 12-22). The Appeals Council denied Plaintiff's request for review; therefore, the ALJ's decision remains as the final decision of the Commissioner.

Plaintiff was 34 years old at the time of the hearing, which is defined as a younger individual. He dropped out of high school in the 11th grade, but subsequently attained his GED. He lives with his girlfriend in a single story ranch home. The ALJ determined that Plaintiff has the following severe impairments: "multilevel degenerative disc disease status post surgeries, depression, and panic disorder." (Tr. 14). The ALJ determined that none of Plaintiff's impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. Instead, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a range of unskilled sedentary work subject to the following additional limitations:

> [H]e should never climb ladders, ropes, or scaffolds, and never crawl. He can only occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. He must avoid all use of dangerous machinery, all exposure to unprotected heights. He is able to perform simple, routine, and repetitive tasks. He can interact with the public up to approximately 15% of the workday, but no transactional interaction such as sales or negotiations. He is limited to no more than occasional interaction with coworkers and supervisors. He should avoid work environments requiring him to interact with crowds or in large groups and he is limited to no constant production rate pace work such as an automated assembly line or work requiring rapid pace.

(Tr. 15). Based on the testimony of the vocational expert, the ALJ determined that although Plaintiff could not perform any past relevant work, he still could perform a significant number of jobs in the regional and national economy, including the representative occupations of machine operator and inspector. (Tr. 22). Therefore, the ALJ concluded that Plaintiff is not under a disability. (*Id.*)

In his Statement of Errors,[2] Plaintiff argues that the ALJ erred: (1) by failing to give controlling weight to a medical opinion that Plaintiff met or equaled Listing 1.04; (2) by improperly assessing Plaintiff's pain level; and (3) by improperly assessing Plaintiff's credibility.[3]

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if

---

[2]Plaintiff's Statement of Errors spans 29 pages. As stated in Local Rule 7.2(a)(3), "[t]he Court prefers that memorandum in support of or in opposition to any motion or application to the Court not exceed twenty pages."
[3]The three errors discussed in the body of Plaintiff's memorandum do not precisely correspond with the four errors listed in the "Assignment of Errors" section of his brief. Nevertheless, all asserted errors have been discussed within this R&R.

4

substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B. Specific Errors

Plaintiff's assertions of errors concern his alleged disability due to his back condition and/or related pain from that condition. No claim is asserted in this appeal regarding his mental impairments.

### 1. Opinion Evidence Relating to Chronic Back Pain/ Listing

#### a. Step 3 Analysis

As stated above, at Step 3 of the sequential analysis, the Commissioner determines whether a Plaintiff meets or equals a listed impairment, such that he would be entitled to a presumption of disability. On November 29, 2011, a non-examining consultant, Gary Hinzman, M.D., reviewed Plaintiff's medical records and rendered an opinion that Plaintiff was not disabled. (Tr. 77-78). Listing 1.04 for spine disorders was specifically considered. (Tr. 75). At the time of Dr. Hinzman's assessment, no other medical source had offered any opinion that Plaintiff's limitations or restrictions were more restrictive. (Tr. 81).

By the time of the January 2013 hearing, Plaintiff's counsel advised that he was awaiting a report from a new physician, Dr. Lutz, who had examined Plaintiff shortly before the hearing at counsel's request. The ALJ agreed to hold the record open until Dr. Lutz's report was received. On February 14, 2013, Dr. Lutz issued a two-page written opinion. The opinion noted clinical examination findings of tenderness with spasm over the right lumbosacral region, a decrease in Plaintiff's deep tendon reflexes of the lower extremities on the right, decreased sensation over the right calf, and substantial weakness on manual muscle testing on the right. In addition, Dr. Lutz noted that straight leg raise testing produced right-sided low back pain, with positive radicular signs to the right toes. Based on a combination of his clinical examination findings on

6

December 19, 2012 and his review of two independent medical examinations performed in 2005 by Drs. McDonough and Wackendorf, a 2003 independent medical examination performed by Dr. Haverkos, and a June 13, 2006 MRI study, Dr. Lutz specifically opined that Plaintiff's impairment met specific criteria for Listing 1.04(A):

> Mr. Cope clearly meets the listing of medical impairments, specifically 1.04(A), as he has disorders of the spine consisting of multiple herniated nucleus pulposi resulting in compromise of the right L4 and S1 nerve roots, with evidence of nerve root compression characterized by neuro-anatomic distribution of right leg pain, limitation of motion of the spine, motor loss of the right extensor hallices and foot dorsiflexors accompanied by sensory loss over the right lateral calf and decreased reflexes on the right. Also a positive straight leg raise test was noted on the right.
>
> …In my opinion, Mr. Cope meets every criteria of the above impairment [Listing 1.04(A)] without qualification.

(Tr. 632).

> The listing referenced by Dr. Lutz defines the relevant criteria as follows:
>
> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
> With:
>
>   A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Without acknowledging Dr. Lutz's opinion that Plaintiff met Listing 1.04(A), the ALJ found that Plaintiff did not meet or equal any listed impairment at Step 3 of the sequential analysis:

> <u>No treating or examining physician has indicated that the claimant has an impairment equivalent in severity to the criteria of any of [the] listed</u>

7

> impairment[s] in the Listings of Impairments in 20 CFR 404, Subpart P, Appendix 1. Nevertheless, all applicable Listings were considered.
>
> Specifically, the undersigned has considered Listing 1.04 concerning disorders of the spine; however, there is no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis along with the other requisite findings as required by the Listing.

(Tr. 14)(emphasis added).

The ALJ's statement – that no treating or examining physician has opined that Plaintiff meets a Listing – reflects reversible error. Dr. Lutz clearly explained that Plaintiff suffers from "multiple herniated nucleus pulposi" with multiple signs such as positive straight-leg raising tests and other evidence of nerve root compression that would satisfy the listing. The ALJ not only failed to acknowledge Dr. Lutz's opinion in this regard, but she failed to consider the specific criteria on which Dr. Lutz opined, including a qualifying spine disorder due to Plaintiff's herniated nucleus pulposus and degenerative disc disease. Instead, the ALJ summarily considered only a portion of the listing without elaboration sufficient for this Court to review. *Accord Short v. Colvin*, 2013 WL 3467159 (S.D. Ohio July 10, 2013) (remanding for further development of the record where the ALJ's step three determination that the claimant did not meet or equal Listing 1.04A was not supported by substantial evidence).

### b. Asserted Error in Weighing Opinion Evidence

Although the ALJ failed to acknowledge Dr. Lutz's specific opinion that Plaintiff met all criteria for Listing 1.04 at Step 3, the ALJ briefly addressed Dr. Lutz's opinion in part at Step 4, when formulating Plaintiff's RFC. At that point of her analysis, the ALJ held that Dr. Lutz's opinion was entitled to "[l]ittle weight."

> [H]is assessment is primarily based on a one-time examination of the claimant, the results of which are inconsistent with the medical evidence of record as a whole. Of note, the claimant was not observed requiring the use of ambulatory aids during the examination. In addition, a CT of the

8

> claimant's lumbar spine dated December 12, 2012 was absent [for] any significant changes from prior studies…. Again, multilevel degenerative disc disease (DDD) with disc space narrowing and endplate spurring, greatest at the L3-L4 and L4-L5 levels, was observed (*Id.*)

(Tr. 18).

The relevant regulation regarding treating physicians provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004); SSR 96-2p. The Commissioner is required to provide "good reasons" if the Commissioner does not give controlling weight to the opinion of a treating physician. *Id.*

Plaintiff argues that the ALJ's reasons for rejecting Dr. Lutz's opinion were not "good reasons" because the ALJ failed to recognize that "Dr. Lutz <u>became</u> Mr. Cope's treating physician responsible for the day-to-day physical medicine management," with access to all of Plaintiff's treatment records. (Doc. 12 at 12, emphasis added). Plaintiff argues that the ALJ was required to give Dr. Lutz's opinion, that Plaintiff met or equaled Listing 1.04, "controlling weight." (*Id.*)

As Defendant points out, at the time Dr. Lutz rendered his opinion that Plaintiff met Listing 1.04, it was unclear whether Dr. Lutz fell within the regulatory definition of a "treating physician." *See* 20 C.F.R. § 404.1502 (defining "treating source" as "your own physician, psychologist, or other acceptable medical source who ... has, or has had, an ongoing treatment relationship with you"). Dr. Lutz initially provided his report to counsel following just one examination. *See id.* ("We will not consider an acceptable medical source to be your treating source if your relationship with the source is not

9

based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability."); *Bell v. Barnhart*, 148 F. App'x 277, 284-85 (6th Cir. 2005); *Boucher v. Apfel,* No. 99–1906, 2000 WL 1769520, at *9 (6th Cir. Nov.15, 2000) (concluding that although the physician examined the claimant on three occasions, he was not a treating source).  Nevertheless, there is no question that Dr. Lutz examined a number of historical records and became Plaintiff's treating physician shortly after that initial examination.

The ALJ rejected Dr. Lutz's opinion both because it was not well supported, "primarily based on a one-time examination," and because the ALJ found it to be "inconsistent with the medical evidence of record as a whole." (Tr. 18).  That analysis closely mirrors regulatory language that states that controlling weight need not be given to a treating source's medical opinion that is not "well supported by medically acceptable clinical and laboratory diagnostic techniques" or to one that is "inconsistent with the other substantial evidence in the record."  Despite mirroring the regulatory language, the ALJ's analysis is not supported by substantial evidence in the record as a whole.

The undersigned's reasons for recommending remand in this case do not fully align with Plaintiff's arguments.  Plaintiff contends that the ALJ was required to order a consultative physical examination, and/or to obtain the testimony of a medical expert before rejecting Dr. Lutz's opinion.  In Plaintiff's view, the ALJ's RFC determination was error "[i]n the absence of a medical opinion" specifically supporting the RFC determination. (Doc. 12 at 19).  According to Plaintiff, "[t]he ALJ cannot deny disability benefits without some medical opinion Mr. Cope is capable of gainful employment." (*Id.*).

10

The undersigned cannot agree with Plaintiff's factual or legal premise in this respect. First, the state agency non-examining consultant, Dr. Hinzman, did opine in 2011 that Mr. Cope is capable of fulltime gainful employment at the light exertional level, so long as he never climbed ladders, ropes or scaffolds, was limited to "frequent" stopping, and only "occasional" kneeling, crouching, and crawling. The ALJ gave only "some weight" to Dr. Hinzman's opinion because the ALJ believed that the Plaintiff's "continued complaints" supported more severe limitations. The ALJ adopted Dr. Hinzman's opinions that Plaintiff could never climb ladders, ropes or scaffolds, that he could only occasionally crouch, crawl, or kneel. (Tr. 77-78). However, in contrast to Dr. Hinzman, the ALJ limited Plaintiff to sedentary work and found that Plaintiff could only occasionally climb ramps and stairs, balance, and stoop, and that he must avoid all exposure to dangerous machinery or to unprotected heights.

Regardless, the regulations contain no legal requirement that prohibits an ALJ from adopting a residual functional capacity that differs from the RFC opinions offered by physicians, <u>so long as the RFC determined by the ALJ is supported by substantial evidence</u>. In fact, the statute and regulations clearly state that the determination of a claimant's RFC is "reserved to the Commissioner." 42 U.S.C. § 423(d)(5)(B); *see also Nejat v. Com'r of Soc. Sec.*, 359 Fed. Appx. 574, 578 (6th Cir. 2009) ("Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner."); *see also generally* 20 C.F.R. § 404,1527(d)(opinions on issues reserved to the Commissioner); 20 C.F.R. § 404.1546(c)("[T]he administrative law judge…is responsible for assessing your residual functional capacity.") Thus, the Sixth Circuit has repeatedly held that "[a]n ALJ does not improperly assume the role of a medical expert

11

by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Com'r of Soc. Sec.*, 391 Fed. Appx. 435, 439 (6th Cir. 2010) (holding that ALJ did not err by determining that plaintiff could perform sedentary work, contrary to opinions of treating and examining physicians)(internal citations omitted). An ALJ is required to retain a medical expert only under two circumstances, both of which are discretionary and neither of which is specifically argued by Plaintiff in this case. *See generally*, SSR 96-6p.

Although the undersigned is not persuaded that the failure of the ALJ to obtain an updated consultative examination in this case <u>alone</u> constitutes reversible error,[4] the undersigned does agree that the ALJ's non-disability determination and reasons for rejecting Dr. Lutz's opinion are not supported by substantial evidence. Many if not most of the medical records in this case reference some nerve root involvement and/or radiculopathy, and the record contains multiple positive straight leg tests,[5] which findings are contrary to the ALJ's conclusion that there is "no evidence of nerve root compression" or other criteria that supports Dr. Lutz's opinion that Plaintiff's spine condition meets or functionally equals Listing 1.04. Dr. Lutz's December 19, 2012 examination notes refer to a CT scan of 12/3/12, which "revealed slightly more pronounced herniations at L2-3, L3-4 and L4-5, as well as a difference in the orientation of his spinal cord stimulator leads." (Tr. 627). The referenced CT report reflects "broadbased disc bulge" at L5-S1, with "probable abutment of the exiting right L5 nerve root and descending right S1 nerve root." (Tr. 621). Plaintiff's historical records

---

[4]This is not to say that an updated consultative exam would not be beneficial, but only that the Plaintiff has not shown that the ALJ's decision to forego an expert in this case does not alone provide grounds for reversal.
[5]The ALJ cited two of Plaintiff's positive straight leg tests (Tr. 17, 19), but focused on a negative straight leg tests in August 2010 and in January 2011. (Tr. 18).

12

similarly reference nerve involvement. In September 2005, Plaintiff underwent a neurolysis with decompression of right L4 and L5 nerve roots (Tr. 489-493), and a year later, he underwent implantation of a spinal cord stimulator (Tr. 489-493). (*See also, e.g.*, Tr. 256 (2008 CT scan noting a lack of nerve root impingement in some areas, but also noting "mixed right paracentral disk protrusion at L5-S1, directly abutting the right S1 nerve root sleeve" and recommending MRI study to confirm presence of radiculopathy); Tr. 261 (2008 study "suspect … an L5 chronic active radiculopathy")).

In short, despite evidence of initial post-surgical improvement noted by the ALJ, the same records consistently reflect radiculopathy. (*See* Tr. 544 "newest [CT] dated 7.17.09 shows the L4/5 disc is causing moderate bilaterally lateral recess Stenosis and now there is ligamentum lavum hypertrophy with Lumbar spine facets arthrosis" in addition to an "EMG…dated 7.22.09 [that] shows L5 Radiculopathy on the right"). In fact, Plaintiff's most recent records reflect worsening radicular pain. A CT scan performed on May 20, 2013 noted L5-S1 right paracentral broad based disc herniation with encroachment of the right L5 foramen and exiting L5 nerve root, mild effacement of the traversing right S1 nerve root, and other abnormalities. (Tr. 635-636). An orthopaedic spine surgeon, Nael Shanti, M.D., submitted a report dated May 7, 2013 that reflects Plaintiff's report of increased severe radicular pain as of "a few months ago" with multiple findings that arguably could satisfy Listing 1.04(A). (Tr. 633-634). A lumbar MRI performed on May 20, 2013 and an EMG performed on May 24, 2013 reflected similar findings consistent with nerve involvement. (*See* Tr. 646).

Dr. Hinzman, the non-examining consultant whose opinion the ALJ gave only "some" weight in determining Plaintiff's RFC, did not have access to any of Plaintiff's most recent records. In *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 408-

13

409 (6th Cir. 2009), the Sixth Circuit confirmed that an ALJ may give greater weight to the opinion of even a non-examining consultant who has failed to review a complete record, but that in such cases, the ALJ should articulate her reasons for doing so. If she fails to provide sufficient reasons, the ALJ's opinion still may be affirmed if substantial evidence supports the opinion and any error is deemed to be harmless or *de minimis*.

Here, the ALJ acknowledged Plaintiff's recent records but was dismissive of the findings as generally "mild" and as not reflecting "significant changes from prior studies." (Tr. 18-19). The ALJ also focused on Plaintiff's report of "good relief" from his pain medications which "improved overall function." (Tr. 19 citing Tr. 640). However, the ALJ's focus on isolated reports of pain relief ignored that the same records reflect Plaintiff's use of a cane, "markedly stiffened gait, with a substantial limp," with spasm, decreased sensation on the right side, and substantial weakness on the same side, all of which reflect continued nerve involvement that arguably supports Dr. Lutz's opinion that Plaintiff's impairment equaled listing level severity. (Tr. 640). Thus, on the whole, the ALJ's determination of Plaintiff's RFC through the date of her decision cannot be said to be supported by substantial evidence.

### 2. Pain and Credibility

Plaintiff's second and third assertions of error comprise two sides of the same coin and therefore are addressed together. Plaintiff argues that the ALJ disregarded regulatory standards when she discounted his subjective complaints of pain, finding them not to be fully credible. Plaintiff testified that he is disabled due to his pain level, which he alleges causes him difficulty standing and requires use of an ambulatory device. He testified and/or reported that he can stand or walk only for 5-10 minutes prior to needing to rest, and that the has difficulty lifting, bending, reaching, sitting,

kneeling, and stair climbing, can lift no more than 10 pounds, and can sit for no more than 10 minutes at a time. (Tr. 182-189). Plaintiff testified that he experiences daily panic attacks upon waking, and does very little during the day, although he does let his dog out, prepares lunch, and watches television. The ALJ acknowledged that Plaintiff suffers from chronic and severe pain, but found his pain not to be disabling based in part upon a negative assessment of Plaintiff's credibility. She stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 17).

An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387, 392 (6th Cir. 2004).

Considering that the ALJ limited Plaintiff to sedentary work with a number of non-exertional limitations in a more restrictive RFC determination than that offered by the non-examining agency consultant, she clearly recognized that Plaintiff is significantly limited by his pain. The ALJ cited multiple reasons for finding Plaintiff not to be fully credible insofar as the ALJ did not believe Plaintiff's pain to disable him from all work.

15

(Tr. 18-20).[6] Plaintiff complains that the ALJ erred by failing to specifically discuss each of the factors enumerated in SSR 96-7p and 20 C.F.R. §415.929(C)(3). Plaintiff points to his "[m]edical history and objective medical evidence (such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption) [as] usually reliable indicators…about the intensity and persistence of pain." *Field v. Apfel*, 34 F. Supp.2d 1081, 1086 (W.D. Tenn. 1998). In response, the Commissioner generally relies on the propriety of the factors that were considered by the ALJ, and the overall special deference given to credibility determinations.

In light of the other errors that require reversal of this case and the significant likelihood that those errors impacted the credibility analysis, the ALJ should re-evaluate Plaintiff's credibility and pain complaints on remand.

### III. Conclusion and Recommendation

In *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 173 (6th Cir. 1994), the Sixth Circuit set forth "what a district court should do once a determination is made that an ALJ erroneously applied the regulation and the Secretary's denial of benefits therefore must be reversed." *Faucher* explained that a trial court "can reverse the decision and immediately award benefits *only* if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id.* at 176 (emphasis added).

This is not a case in which all factual issues have been resolved. For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be

---

[6]Without elaboration, the ALJ cited Plaintiff's marijuana use as a basis for discounting his credibility. There was some evidence that Plaintiff uses marijuana on a daily basis, allegedly to control his pain, but the ALJ did not find marijuana abuse to be a severe impairment. Inconsistent reports of substance abuse and/or non-compliance with recommended treatment may provide legitimate reasons to discount a plaintiff's credibility. On the other hand, if an ALJ believes that a claimant would be able to work in the absence of his or her substance abuse, a different type of analysis is required.

**REVERSED AND REMANDED** under sentence four, for further development of the record consistent with this report and recommendation, and that this case be **CLOSED.**

                                        <u>/s Stephanie K. Bowman</u>
                                        Stephanie K. Bowman
                                        United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RAYMOND P. COPE,

        Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. 1:15-cv-280

Beckwith, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).